

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

F. #2019R01145

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 19, 2019

By Hand and ECF

The Honorable Ann M. Donnelly
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *United States v. Bo Mao*
             Criminal Docket No. 19-0392 (AMD)

Dear Judge Donnelly:

      The government respectfully submits this letter to notify the Court regarding a potential conflict involving counsel for the defendant in the above-referenced matter. This potential conflict arises from the payment of legal fees by a U.S. subsidiary of the defendant's alleged co-conspirator.

      The government advises the Court of this information pursuant to its obligation under Second Circuit law so the Court may conduct the appropriate inquiry pursuant to United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir. 1982), including by appointing Curcio counsel during the next court appearance on November 21, 2019. See, e.g., United States v. Stantini, 85 F.3d 9, 13 (2d Cir. 1996); United States v. Malpiedi, 62 F.3d 465, 467 (2d Cir. 1995).

BACKGROUND

   I.    The Complaint and Information

      On August 14, 2019, a complaint was sworn out in the Northern District of Texas charging the defendant Bo Mao with a conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. The complaint alleged, among other things, that Mao attempted to obtain the technology of a United States company as part of a scheme involving Company 1, a telecommunications conglomerate based in the PRC. (See Complaint ¶ 5). The complaint also alleges that Mao was "surreptitiously working for payment on behalf of Company 1 to misappropriate the Victim Company's" technology. (See Complaint ¶ 14).

On August 28, 2019, the defendant was arraigned in the Eastern District of New York on a one-count information charging him with a conspiracy to commit wire fraud. The defendant waived indictment and venue, then entered a plea of not guilty.

II.  Defendants' Representations Before the Courts

On August 14, 2019, the defendant completed an affidavit in the Northern District of Texas in which he stated that he lacked sufficient funds to pay for an attorney. On the basis of that affidavit, the defendant was represented by a Federal Defender.

Since the case has been transferred to this district, attorneys from the law firms Thompson & Knight LLP ("Thompson") and Wilson Sonsini Goodrich & Rosati ("Wilson") have entered appearances in this matter as counsel of record. In response to the government's request, both firms have provided the defendant's engagement letters and payment agreements. (Exs. A-D).[1] Notably, the engagement letters, dated September 5 and 26, 2019, respectively, indicate that Company 1 initially agreed to pay the defendant's legal fees and expenses, whereas the payment agreements, dated October 8 and 9, 2019, respectively, reflect that ███████, a U.S. subsidiary of Company 1 ("U.S. Subsidiary 1"), is currently paying for the defendant's attorney's fees. Counsel from both firms have confirmed that U.S. Subsidiary 1 is, in fact, paying their fees. Given that the defendant is not employed by either Company 1 or Subsidiary 1, ███████████████████████

## DISCUSSION

I.  Applicable Law

A.  Overview

The Sixth Amendment affords a criminal defendant the right to effective assistance of counsel. See Wood v. Georgia, 450 U.S. 261, 271 (1981); United States v. Perez, 325 F.3d 115, 124 (2d Cir. 2003). That right, however, is not absolute and does not guarantee the defendant counsel of his own choosing. See United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004); United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993). While there is a "presumption in favor of the [defendant's] chosen counsel, such presumption will be overcome by a showing of an actual conflict or a potentially serious conflict." Jones, 381 F.3d at 119 (citing Locascio, 6 F.3d at 931); see also Wheat v. United States, 486 U.S. 153, 164 (1988).

---

[1]  Thompson and Wilson provided Exhibits A through D to the government on the condition that they not be publicly filed; they are only attached to courtesy copies filed with the Court and provided to defense counsel. All of these exhibits reflect that Company 1 or U.S. Subsidiary 1 will pay for the legal fees, to the extent that the defendant's university employer in the PRC does not pay for the legal fees.

2

To determine if the defendant's counsel is burdened by a conflict of interest, a district court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994). An actual conflict exists "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." Jones, 381 F.3d at 119 (internal quotation marks and citations omitted). A potential conflict arises if "the interests of the defendant could place the attorney under inconsistent duties in the future." Id. (emphasis and citations omitted).

1. Disqualification

If an attorney suffers from an actual or potential conflict of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation, the court must disqualify that attorney. See United States v. Lussier, 71 F.3d 456, 461-62 (2d Cir. 1995). Such per se conflicts of interest are not only unwaivable, but are of such a serious nature that if allowed to persist through trial and conviction, on appeal they result in automatic reversal without requiring a showing of prejudice. United States v. Williams, 372 F.3d 96, 103 (2d Cir. 2004). Regardless of the severity of the conflict or the defendant's willingness to waive the conflict, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160. "The question of [attorney] disqualification therefore implicates not only the Sixth Amendment right of the accused, but also the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial." Locascio, 6 F.3d at 931. Accordingly, "a district court should decline to permit a defendant to be represented by the counsel of his choice if that representation would undermine the integrity of the judicial process." United States v. DiPietro, No. 02 CR 1237 (SWK), 2004 WL 613073, at *4 (S.D.N.Y. Mar. 29, 2004) (citing Wheat, 486 U.S. at 163).

2. Conflicts That May Be Waived

If a conflict is such that a rational defendant could knowingly and intelligently choose to continue to be represented by the conflicted attorney, the Court must obtain directly from the defendant a valid waiver in accordance with the procedures set forth in Curcio. See, e.g., Malpiedi, 62 F.3d at 470; Levy, 25 F.3d at 153; United States v. Iorizzo, 786 F.2d 52, 58-59 (2d Cir. 1986). In summarizing Curcio procedures, the Second Circuit has instructed the trial court to:

> (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the

3

>  defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

Iorizzo, 786 F.2d at 59; see also Curcio, 680 F.2d at 888-90. By relying on waivers of potential conflict claims, courts are spared from having to wade into the intricacies of those claims. United States v. Jiang, 140 F.3d 124, 128 (2d Cir. 1998).

Finally, the need for a Curcio hearing exists regardless of whether a case is disposed of by way of guilty plea or trial. "A claim that counsel is conflicted is in essence a claim of ineffective assistance of counsel." Stantini, 85 F.3d at 15. Likewise, "[e]ffective assistance of counsel includes counsel's informed opinion as to what pleas should be entered." Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996). Therefore, it necessarily follows that a defendant has a right to conflict-free representation during the plea negotiation stage. See id. ("[P]rior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.") (quoting Von Moltke v. Gillies, 332 U.S. 708, 721 (1948) (emphasis added)); see also Stantini, 85 F.3d at 16-17 (suggesting that ineffective assistance of counsel may be shown if attorney's dual representation led to inadequate advice "with respect to the advantages or disadvantages of a plea").

B. Payment of Legal Fees by Third Parties

As articulated by the Second Circuit, a conflict may arise when an attorney is paid by a third party, rather than by his or her own client:

> Ethical considerations warn against an attorney accepting fees from someone other than her client. As we stated in a different context, the acceptance of such "benefactor payments" "may subject an attorney to undesirable outside influence" and raises an ethical question "as to whether the attorney's loyalties are with the client or the payor."

Locascio, 6 F.3d at 932 (quoting In re Grand Jury Subpoena Served Upon John Doe, Esq., 781 F.2d 238, 248 n.6 (2d Cir. 1986) (en banc)); see Wood v. Georgia, 450 U.S. 261, 269–70 (1981) ("Courts and commentators have recognized the inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party, particularly when the third party is the operator of the alleged criminal enterprise."); United States v. Wells, 394 F.3d 725, 733–34 (9th Cir. 2005); Moreno-Godoy v. United States, 2014 WL 1088300, at *32 (S.D.N.Y. Mar. 20, 2014) ("A conflict of interest can arise where a third party's payment of a defendant's attorney's fees leads to a theoretical division of loyalties."); United States v. Arakelian, No. 04 Cr. 447 (RPP), 2005 WL 2173923, *6-7 (S.D.N.Y. Sept. 6, 2005) (describing Curcio-related inquiry related to potential benefactor payments); United States v. Gotti, 771 F. Supp. 552, 562 (E.D.N.Y. 1991) (discussing the "pernicious effect of benefactor payments upon the 'institutional interest in the rendition of just verdicts in criminal cases' and

the extent to which they 'gravely imperil the prospect of a fair trial'" (citing Wood, 450 U.S. at 268-69)).[2]

"By their very nature, third-party fee arrangements create numerous ethical pitfalls into which even the most wary criminal defense attorney may stumble." United States v. Duran-Benitez, 110 F. Supp. 2d 133, 151-52 (E.D.N.Y. 2000) (citing New York Disciplinary Rule 5-107); see also Restatement § 134(1) ("A lawyer may not represent a client if someone other than the client will wholly or partly compensate the lawyer for the representation, unless the client consents . . . and knows of the circumstances and conditions of the payment."). "These ethical pitfalls become especially dangerous when a defendant's lawyer is hired and paid by 'the operator of the alleged criminal enterprise.'" Duran-Benitez, 110 F. Supp. 2d at 152 (quoting Wood, 450 U.S. at 269). In such situations, the Supreme Court wrote in Wood, there exists a "risk that the lawyer will prevent his client from obtaining leniency by preventing the client from offering testimony against his former employer or from taking other actions contrary to the employer's interest." Wood, 450 U.S. at 269; see also In re: Grand Jury Subpoena Served Upon John Doe, Esq., 781 F.2d at 248 n.6 (noting that when "the third party is the head of a criminal enterprise of which the clients are members . . . an ethical question arises as to whether the attorney's loyalties are with the client or the payor").

II. Analysis

This case presents two different potential conflicts.

First, because a third party is paying the defendant's legal fees, the defendant's counsel faces a potential conflict of interest. The potential conflict is compounded by the fact that the third party funding the defense is a U.S. subsidiary of the company with whom the defendant is alleged to have conspired. These circumstances pose real "inherent dangers" in that the payment of legal fees by a third party—particularly a party directly related to a co-conspirator—"may subject an attorney to undesirable outside influence" and raise an ethical question "as to whether the attorney's loyalties are with the client or the payor." Locascio, 6 F.3d at 932.

The primary concern is that this payment structure has the potential to affect defense counsel's advice, including (1) whether to seek possible leniency by cooperating with the government against Company 1, and (2) whether the defendant should testify in his own defense at trial, where such testimony might implicate Company 1. See, e.g., Wood, 450 U.S. at 270 ("One risk is that the lawyer will prevent his client from obtaining leniency by preventing the client from offering testimony against his former employer or from taking other actions contrary to the employer's interest."); Amiel v. United States, 209 F.3d 195, 198–99 (2d Cir. 2000) (reasoning that if trial counsel advised defendant not to testify even though testifying was in the best interests of the defendant, to avoid inculpating the payor of counsel's

---

[2] "[A]bsent special circumstances . . . , disclosure of fee information and client identity is not privileged . . . ." In re Grand Jury Subpoena Served Upon John Doe, Esq., 781 F.2d at 248.

5

fees, "these facts . . . would entitle appellant to relief [on an ineffective assistance claim] on the ground that trial counsel abdicated his duty of loyalty by permitting a third party who paid his fees to influence his professional judgment in representing [the defendant]" (citations omitted)); Wood, 450 U.S. at 270 ("Another kind of risk is present where, . . . the party paying the fees may have had a long-range interest in establishing a legal precedent and could do so only if the interests of the defendants themselves were sacrificed.").[3]

Second, the fact that the defendant's legal fees are being paid by the subsidiary of a co-conspirator that allegedly directed the defendant's illegal activities could be introduced against the defendant during a trial as evidence of the existence of the alleged conspiracy, as an act in furtherance of the conspiracy, as compensation for the defendant's participation in the conspiracy, and/or as "hush" money. See In re Grand Jury Subpoena Served Upon Doe, 781 F.2d 238, 251 (2d Cir. 1986) ("[P]ayment for legal representation may be a form of compensation to members of a crime 'crew'"); United States v. Simmons, 923 F.2d 934, 949 (2d Cir. 1991) ("Rather, the evidence demonstrated that Peter Monsanto preferred that appellants use [attorney] Port and that, in at least some situations, he made benefactor payments to Port on their behalf, including a payment with Gary Simmons of $10,000 to handle an appeal for Arnold Lawson in a state narcotics case and of $100,000 to $150,000 for services in connection with certain FBI searches. These facts alone created a suspicion that appellants were somehow linked.").

Notably, the defendant does not work for Company 1 or U.S. Subsidiary 1, and has no indemnification agreement that the government is aware of with any entity related to Company 1, so the commitment by U.S. Subsidiary 1 to pay what are likely substantial legal fees to two expensive law firms demonstrates the closeness of the relationship between the defendant and Company 1, as well as the magnitude of Company 1's interest in the outcome of the instant litigation. Although introducing evidence that a party related to the defendant's co-conspirator is paying his legal fees might not require making the defendant's actual attorneys witnesses against him, it is possible that the government would seek to introduce non-privileged billing and retention evidence obtained from those attorneys' law firms. Moreover, there is a possibility that communications made by the third party responsible for paying attorney's fees, or by Company 1 or other Company 1 subsidiaries, to current counsel of record could be admissible against the defendant—thus rendering counsel of record potential trial witnesses who could not be effectively cross-examined by the defendant. For

---

[3] See also United States v. Bernstein, 533 F.2d 775, 788 (2d Cir. 1976) ("Since the codefendants were underwriting Behar's defense, this readily apparent conflict could be seen by the court to indicate a significant probability of prejudice. The freedom of the attorney, whether in cross-examination or assertion of the defense of lack of authority, could have been inhibited and a full and uncompromised defense of his clients' interests have been seriously impaired. While neither Judge Travia nor this court in any manner questioned the integrity of Mr. Boitel or his assurance that he would give Behar full and proper representation regardless of who was paying him, the court had a special duty to make certain that any waiver was knowingly and intelligently made.").

example, current counsel could be potential trial witnesses as to the decision to have U.S. Subsidiary 1, rather than Company 1, provide the benefactor payments. If additional investigation identifies such admissible communications, the government will bring those to the Court's and the defendant's attention. As of now, the defendant should be apprised of this possibility.

Therefore, a <u>Curcio</u> inquiry is appropriate to determine: (i) whether the payment of the defendant's legal fees by U.S. Subsidiary 1 presents a conflict; (ii) the nature and extent of that conflict; and (iii) whether the defendant is willing and able to make a knowing and voluntary waiver of the conflict. The defendant should also be reminded that, if he cannot afford counsel, he need not rely on the subsidiary of an alleged co-conspirator to pay his legal fees because counsel will be provided to him by the Court.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court notify the defendant of the potential conflicts described above and conduct an appropriate inquiry pursuant to <u>Curcio</u>. The Court should further advise the defendant regarding his right to conflict-free representation and determine whether he waives those rights.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:   /s/ Alexander A. Solomon
Alexander A. Solomon
Assistant U.S. Attorney
(718) 254-6074

Enclosures

cc:     Clerk of the Court (by email)
        Counsel of Record (by ECF)