**WSGR** Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022

PHONE 212.999.5800
FAX 212.999.5899

www.wsgr.com

January 31, 2020

**VIA CM/ECF**

AUSA Alex Solomon
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

  Re: *United States v. Bo Mao,* **No. 1:19-cr-00392-PKC**

Dear AUSA Solomon,

  We write in response to your letter dated January 22, 2020 and to request that the government immediately furnish any discovery materials not previously provided.

  As you are aware, Professor Mao was arrested ***six months ago***. You assured us that as soon as the Court entered the Protective Order the government insisted upon, you would immediately produce the materials in your possession to which we are entitled. The Court entered the Protective Order on January 10, 2020, yet all you have produced thus far is some of our client's and his wife's emails, a video-recording of a post-arrest statement by our client, and <u>Miranda</u> and consent-to-search forms. We have not yet received, by way of example, the transcripts or exhibits from the "Civil Trial" referenced in the criminal complaint, the subject of which, we understand, generated the allegations here. The criminal complaint also makes reference to an "expert witness" with whom the government has already consulted, and who, according to the complaint, examined the "Open-Channel SDK Board" you allege our client "reverse engineered," yet we have received no report of that expert's examination. We have not yet received a single document obtained by the government from any third party, including by the so-called "Victim Company." Indeed, we have not even received the executed licensing and non-disclosure agreement referenced in the complaint, the alleged breach of which forms the basis of the sole count of the Information against Professor Mao.[1]

  There is no legitimate excuse for further delay in production of discovery. These materials should have been gathered and prepared for production many months ago. Continued failure to produce discovery materials hinders our ability to investigate the government's allegations, unnecessarily prolongs this case and our client's return to his home country, and jeopardizes his Constitutional and statutory rights to a speedy trial. Indeed, our client's consent to the exclusion of time at the last court appearance was predicated on the government's representation that the discovery would be produced forthwith.

---

[1] The foregoing discoverable materials are only by way of example, and by no means are intended to reflect an exhaustive list of items to which we are entitled.

To that end, please provide a separate response to each discovery request below. If the government does not have a requested item in its possession, please provide a statement indicating that such materials do not exist or are not in the government's possession so that we may make appropriate and timely efforts to obtain the materials.[2] Similarly, if the government believes it has already fully or partially complied with a particular request, please identify the Bates numbers of the responsive documents. If you would like to meet and confer regarding any of these requests, please let us know.

A. **SDK Board**

We note in your January 22 letter that you have in your possession the "Open-Channel SDK Board" referenced in the criminal complaint. We will work with you to schedule a mutually convenient time for our inspection of that device — and any other physical evidence in the government's possession. In the meantime, *we hereby seek adequate notice of any form of destructive testing or examination which in anyway modifies the condition of the Open-Channel SDK Board or other physical evidence so that we may be heard on an appropriate protocol be implemented and seek Court involvement in that regard if necessary.*

We also request all documents reflected the government's receipt of the Open-Channel SDK Board and any documentation regarding its chain of custody.

B. **Federal Rule of Criminal Procedure 16**

We hereby request that the government disclose the following materials consistent with its obligations under Federal Rule of Criminal Procedure 16:

1. The substance of any relevant oral statement, whether or not subsequently memorialized in writing, made by Professor Mao in response to questioning by a government agent or representative. *See* Fed. R. Crim. P. 16(a)(1)(A). Specifically included in this request are all draft reports and notes from the agents who took the statement attributed to Professor Mao and any notes, draft reports, or final reports from any government agents' interactions with Professor Mao during his arrest.

2. The portion of any written record containing the substance of any oral statements made by Professor Mao, whether before or after arrest, in response to questioning by a government agent or representative. *See* Fed. R. Crim. P. 16(a)(1)(B).

---

[2] If the Government is aware that a requested item exists but does not have the item in its possession and cannot obtain it, we request that the Government disclose the location and description of the item.

3. Any written or recorded statements, or copies thereof, made by Professor Mao, which are within the government's possession, custody, or control.  *See* Fed. R. Crim. P. 16(a)(1)(B).  In responding to this request, we specifically ask that the government inquire of all law enforcement personnel and other government agents, representatives or translators whom it knows to have been connected to this case.  We also request that the government inquire of all potential government witnesses or other individuals or entities who have supplied information to the government, whether they are aware of any written or recorded statements of Professor Mao.

This request includes, without limitation:

(a) Any and all written or recorded statements made by Professor Mao;

(b) Any and all statements made by Professor Mao that may have been incorporated in any writing, report, memorandum, transcript, or other document or recording prepared by any government agent or representative;

(c) Any and all notes prepared by Professor Mao.  **Specifically included in this request are copies of the notes Professor Mao created during the previously provided video-taped post-arrest statement or other interview**; and

(d) Any and all documents that bear the signature of, or a signature believed by the government to be the signature of, Professor Mao.

4. All books, papers, documents, data, photographs, videotape recordings, audiotape recordings, microfilm, microfiche, computer data storage systems, or tangible objects, or copies or portions thereof, within the possession, custody or control of the government, that are material to the preparation of Professor Mao's defense.  *See* Fed. R. Crim. P. 16(a)(1)(E)(i).

5. All books, papers, documents, data, photographs, videotape recordings, audiotape recordings, microfilm, microfiche, computer data storage systems, or tangible objects, or copies or portions thereof, within the possession, custody or control of the government, that the government intends to use in its case-in-chief.  *See* Fed. R. Crim. P. 16(a)(1)(E)(ii).

Professor Mao further requests that any documents or other items produced in response to this request be specifically identified as such, both to enable counsel to prepare effectively for trial and to Professor Mao an opportunity to file appropriate pre-trial motions.  *See United States v. Turkish*, 458 F. Supp. 874, 882 (S.D.N.Y. 1978); *United States v. McDonald*, No. 01-CR-1168 (JS) (MLO), 2002 WL 2022215, at *3 (E.D.N.Y. Aug. 6, 2002) ("[A]lthough the government is not required to organize its documentary evidence, … the government shall be required to identify documents upon which it will rely."); *United States v. Upton*, 856 F. Supp. 727, 747-48 (E.D.N.Y. 1994) ("The *purpose*

of requiring the government to identify which documents it will rely upon at trial in a situation . . . where there are thousands of documents -- is to allow the defendant to adequately prepare his or her defense. General familiarity with the nature of the documents . . . will not allow defendants to do that[.]") (emphasis in original). This request includes not only those items that will be marked and offered into evidence, but all of those documents or other items that will be relied upon or referred to in any way by any witness called by the government during its case-in-chief. *See id.*

6. All books, papers, documents, data, photographs, videotape recordings, audiotape recordings, microfilm, microfiche, computer data storage systems, or tangible objects, or copies or portions thereof, within the possession, custody or control of the government, that were obtained from or belong to Professor Mao. *See* Fed. R. Crim. P. 16(a)(1)(E)(iii).

7. Any results or reports of physical or mental examinations and of scientific tests or experiments, or copies thereof, and all documents referring or relating to such reports, that the government intends to use in its case-in-chief or are material to the preparation of Professor Mao's defense, *see* Fed. R. Crim. P. 16(a)(1)(F), including but not limited to:

    (a) Any and all handwriting exemplars, handwriting samples, opinions of handwriting experts, handwriting or document analyses, and all documents used in such analyses;

    (b) Any and all attempts at voice identification by whatever means;

    (c) Any and all fingerprint and palm print exemplars, fingerprint samples, comparisons and opinions of fingerprint experts, and all documents that relate to these opinions;

    (d) Any and all psychological or other tests performed upon any potential government witness, and all documents that refer to such tests; and

    (e) Any and all electronic testing, polygraph examinations, psychological stress evaluations, hypnotic procedures, or any other scientific procedures utilized to determine whether a subject is telling the truth, or to refresh a witness's memory, and all documents that refer or relate to such examinations.

    (f) As previously noted, any report, written or oral, of the examination of the Open-Channel SDK Board at issue in this case.

8. A designation by the government (including the names, addresses and telephone numbers) of any witnesses it intends to call to elicit expert testimony within the meaning of the Federal Rules of Evidence. In the case of each such expert witness, Professor Mao requests that the government provide a written summary of testimony the government intends to use. This summary should describe the witness's opinions, the bases and reasons therefor, and the witness's qualifications. Professor Mao also requests that the

    government disclose any reports, studies, or other data that any such expert will rely upon in giving his or her testimony. *See* Fed. R. Crim. P. 16(a)(1)(G).

  **C. Brady/Giglio Material**

  We note your statement in your January 22 letter that "[t]he government is not aware of any exculpatory material regarding the defendant" and your assurance that you "understand[] and will comply with [your] continuing obligation to produce exculpatory material as defined by <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and its progeny." Nonetheless, for the avoidance of any doubt, we hereby request immediate production of any and all Documents or Information[3] in the possession, custody, and control of the government pursuant to *Brady*, 373 U.S. 83, and its progeny, including *Giglio v. United States*, 405 U.S. 150 (1972), *United States v. Bagley*, 473 U.S. 667 (1985), *United States v. Agurs*, 427 U.S. 97 (1976), and *Kyles v. Whitley*, 514 U.S. 419 (1995) (hereinafter "*Brady/Giglio* Material"), the Fifth and Sixth Amendments to the Constitution of the United States of America, and all applicable law.[4] To be clear, this request seeks Documents or Information that

---

[3] "Documents or Information" means all documents, objects, communications, statements of witnesses, and any other evidence and information and/or notes or recordings related thereto in possession, custody, or control of the United States Department of Justice and/or the United States Attorney's Office for the Eastern Districts of New York, Northern District of Texas or any other District. It includes all Documents or Information in the possession, custody, or control of other prosecution team members, including, but not limited to, the Federal Bureau of Investigation ("FBI"), and thus requires a search of the FBI's emails, texts messages, and documents, including the emails of the case agent(s) and any other law enforcement agent or officer working on the matter. It also includes Documents or Information in the possession, custody, and control of any federal, state or local agencies that have provided assistance to your Office or concurrently investigated the matters at issue in this proceeding.

[4] *See United States v. Mitchell*, 372 F. Supp. 1239, 1257 (S.D.N.Y.) ("[T]he due process implications of *Brady* [obligate] the Government to disclose exculpatory information *as soon as the character of such information is recognized*."), *appeal dismissed and mandamus denied sub nom. Stans v. Gagliardi*, 485 F.2d 1290 (2d Cir. 1973) (emphasis added); *United States v. Goldman*, 439 F. Supp. 337, 349 (S.D.N.Y. 1977) (ordering "that all Brady material be immediately provided to the defendant"); *United States v. Crozzoli*, 698 F. Supp. 430, 436 (E.D.N.Y. 1988) ("To permit the prosecution to withhold exculpatory evidence despite a request until such time as the prosecutor chooses to disclose it, is to permit the prosecutor to control, to some extent, the preparation of a defense."); *United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001) (holding that due process requires the Government to disclose Brady materials in time for its effective use at trial); *United States v. Morrison*, No. 04CR699 (DRH), 2006 WL 2482092, at *4 (E.D.N.Y. Aug. 25, 2006) ("*Brady* material must be furnished sufficiently in advance of trial to permit its effective utilization by the defense. Items delivered belatedly obviously will not satisfy that standard.").

(i) may tend to exculpate Professor Mao; (ii) may be favorable to the defense; (iii) may tend to affect the weight and/or credibility of the evidence to be presented by the government at trial, including any material that may tend to impeach the credibility of either documentary evidence or testimony; and/or (iv) would tend to reduce the punishment imposed if a conviction is obtained, including the application of the United States Sentencing Guidelines. This request is continuing in nature, and we request prompt disclosure in the event that responsive Documents or Information come to the government's attention at any point in the future.

Finally, this request for *Brady*/*Giglio* material includes all statements made by witnesses to law enforcement officials, whether such statements were memorialized or not. *See United States v. Rodriguez*, 496 F. 3d 221 (2d Cir. 2007) (holding that when prosecution is in possession of material information that impeaches its witnesses or exculpates the defendant, it may not avoid its *Brady* and *Giglio* obligation to disclose such information by not writing it down). Likewise, this request specifically includes all statements to law enforcement officials regardless of whether the government credits such statements or whether the witness has since recanted the statement.

### D. Federal Rule of Criminal Procedure 12

As a predicate to motions to be made pursuant to Federal Rule of Criminal Procedure 12, Professor Mao requests the following:

1. That the government provide a description of any evidence in its possession, custody, or control that was obtained by a search and seizure;

2. That the government disclose whether any evidence in its possession, custody, or control was obtained through any electronic or mechanical surveillance or tape recording, and, if so, provide a description of such evidence;

3. That the government disclose whether any recording or other result of electronic or audio surveillance has been scientifically tested, altered, or treated in any other way, and, if so, set forth the time, date, place, and a description of each test or alteration, identify the examiner, and provide copies of any reports and all documents relating or referring to such reports;

4. That the government disclose whether any evidence in its possession, custody, or control was obtained through the use of a tracking device, mail cover, or electronic or audio surveillance, and, if so, provide a description of said evidence and the date, time, and nature of the interception, and any and all documents related to or reflecting any information derived therefrom;

5. That the government disclose whether any tapes, reports of communications, fruits of any interception or search, or notes of any interview requested herein have been or are intended to be discarded or destroyed, and, if so, identify any such materials in sufficient

      detail to permit Professor Mao to make a timely request to the Court for appropriate relief;

6. That the government disclose whether any law enforcement agent who participated in the investigations leading to the indictment in this case violated, or were alleged to have violated, any federal or state law or internal agency policies during the course of the investigations;

7. That the government disclose whether, should Professor Mao testify on his own behalf, the government will attempt to rely upon specific instances of conduct for impeachment purposes pursuant to Federal Rule of Evidence 608(b), and, if so, provide a description of any such instances; and

8. That the government provide the following:

    (i) All applications, affidavits, or other supporting documents for court orders for electronic or video surveillance and applications for extensions thereof or in support of any search warrant;[5]

    (ii) All court orders pertaining to electronic or video surveillance and renewal orders;

    (iii) All interim reports by the government to the Court on such surveillance;

    (iv) All logs of any such surveillance;

    (v) All tapes resulting from such surveillance;

    (vi) All transcriptions resulting from such surveillance, including currently available transcriptions, even if in draft form;

    (vii) All applications for extending the date for notification of such surveillance;

    (viii) All court orders extending the date for such notification;

    (ix) All papers submitted to the Court concerning sealing of electronic or video surveillance tapes;

---

[5] We note that in your January 22 letter, that you collected and produced certain emails. To the extent that any of those emails – or any other materials obtained in connection with the investigation giving rise to Professor Mao's arrest -- were obtained pursuant to a search warrant, we specifically request production the such warrants and supporting affidavits.

   (x)  All consensual tape recordings and transcripts;

### E. Prior Bad Acts

Pursuant to the Fifth and Sixth Amendments to the United States Constitution, Federal Rule of Criminal Procedure 16(a)(1)(D), and Federal Rules of Evidence 403 and 404(b), we request that the government disclose copies of the prior criminal records, if any, of Professor Mao, his agents, or his alleged co-conspirators, and all evidence of other crimes, wrongs, or acts allegedly committed by Professor Mao, his agents, or his/her alleged co-conspirators, which the government may offer into evidence at trial. If the government intends to offer any such evidence, set forth the date, place, and nature of each such crime, wrong, or act to enable the Court to make a determination concerning its admissibility. While we note that the government has indicated it will provide Professor Mao with "reasonable notice in advance of trial" of such materials, we specifically request that those materials be provided now to enable Professor Mao the time to review, investigate, and make appropriate pre-trial motions.

### F. Alleged Accomplices

We hereby request the names and addresses of all co-conspirators known to the government who are not charged in this case. *See United States v. Nachamie*, 91 F. Supp. 2d 565, 572-73 (S.D.N.Y. 2000); *United States v. Kahale*, 789 F. Supp. 2d 359, 372-74 (E.D.N.Y. 2009) (holding that "identifying those unindicted co-conspirators known to the government is necessary to allow the defendants to adequately prepare their defenses and avoid unfair surprise at trial"), *aff'd sub nom. United States v. Graham*, 477 F. App'x 818 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 349 (2012). We specifically request the identity and address of "Co-Conspirator 1, an employee of "Company 1," as referenced in the criminal complaint. Please also provide any statement by an alleged co-conspirator during and in furtherance of the alleged conspiracy which the government will seek to offer at trial. *See* Fed. R. Evid. 801(d)(2)(E).

Please also provide the names and addresses of all cooperating witnesses and/or confidential informants (or, if represented, their counsel) who participated in an investigation related to the incidents in this case.

        \*  \*  \*  \*

Each of the foregoing requests is of a continuing nature and calls for supplementation as soon as the government discovers additional responsive evidence, information, or material.

***As noted above, we request that you ensure that all law enforcement agents (and any other government agents) preserve their notes and draft reports for all persons interviewed during the***

*investigation of Professor Mao, including, but not limited to the individuals whom you expect may be witnesses for the government at trial. We further specifically request that you preserve your own notes and those of any other Assistant United States Attorney from any witness, co-conspirator, or cooperator interviews related to the investigation of Professor Mao. We also request that you ensure all electronic communications and Electronically Stored Information ("ESI"), including all emails, text messages, instant messages, draft reports, etc. created by law enforcement officials (and any other Government agents) in connection with this investigation be preserved. Such emails and text messages are 3500 material which need to be disclosed to the defense, just as a written report would be, and may contain discoverable <u>Brady</u> or <u>Giglio</u> material. <u>See</u>, e.g., <u>United States v. Suarez</u>, Criminal Action No. 09-932 (JLL), 2010 WL 4226524 (D.N.J. Oct. 21, 2010).*

We also request that, for the reasons set forth in The Honorable Judge Gleeson's decision in *United States v. Mahaffy*, No. 05-CR-613 (JG), 2010 WL 2925952, at *6 (E.D.N.Y. July 21, 2010), *vacated*, 693 F.3d 113 (2d Cir. 2012) (vacating convictions due to government's failure to disclose *Brady* material), the attorneys for the Department of Justice and any other government entity involved in this matter "make contemporaneous records of their actions and decisions regarding disclosure in a manner that makes them accessible later on[,]" including records of any decision *not* to disclose information to Professor Mao under *Brady*, *Giglio*, or any other relevant decision or statute.

We reserve the right to amend or supplement the requests for Documents or Information set forth herein. Please let me know if you have any questions regarding these requests or wish to discuss them.

Respectfully,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

s/ *Morris J. Fodeman*
 Morris J. Fodeman

Cc: The Hon. Pamela K. Chen (via CM/ECF)
 All Counsel of Record (via CM/ECF)