

Wilson Sonsini Goodrich & Rosati
Professional Corporation

1301 Avenue of the Americas
40th Floor
New York, New York 10019-6022

O: 212.999.5800
F: 212.999.5899

December 8, 2020

**VIA CM/ECF**

Judge Pamela K. Chen
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 10028

Re: <u>United States v. Bo Mao</u>, No. 1:19-cr-00392 (PKC)

Dear Judge Chen,

    We represent the defendant, Professor Bo Mao, in the above-referenced case and write in anticipation of the sentencing scheduled for December 14, 2020. As the Court is aware, this past Friday, Professor Mao pled guilty to a Superseding Information charging a single count of making a false statement in violation of 18 U.S.C. § 1001. Under the terms of a written Plea Agreement made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties have agreed to recommend a sentence of "time served"[1] and three years' supervised release (hereinafter the "Jointly Recommended Sentence"). For the reasons set forth below, we respectfully submit that, in light of the nature of the offense, Professor Mao's otherwise responsible and law abiding life, and the substantial personal and professional consequences he has already suffered as result of his conduct, the Jointly Recommended Sentence – which is within the advisory guidelines range of 0 to 6 months – is sufficient to appropriately punish Professor Mao, while permitting him and his family to return home to their native China.

    Additionally, as explained more fully below, we respectfully request that in the event the Court adopts the parties' Jointly Recommended Sentence, it take the steps identified below to help ensure Professor Mao is able to return home with his family on December 16, 2020.

*I.  The Sentencing Factors*

    As the Sentencing Guidelines are advisory, the Court must conduct its own independent review of all of the relevant factors, considering any and all information relating to the defendant's background, character, and conduct, and "make an individualized assessment based

---

[1] Following his arrest, Professor Mao served approximately six days in the Mansfield Jail and the White Settlement Police Department. He was released on August 20, 2019 after the government consented to a bond in exchange for his waiver of indictment and consent to venue in the Eastern District of New York.

**WILSON SONSINI**

The Honorable Pamela K. Chen
December 8, 2020
Page 2

on the facts presented." *Gall v. United States*, 552 U.S. 38, 49-50 (2007). A sentence must be sufficient but "'not greater than necessary' to accomplish the goals of sentencing," *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (quoting 18 U.S.C. § 3553(a)) (emphasis added), and a sentence is inappropriate where it exceeds the minimum sentence necessary to achieve its purposes. *See United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008).

The relevant sentencing statute, 18 U.S.C. § 3553(a), sets forth a number of factors that the Court must consider when imposing a sentence. Among other things, those factors include the history and characteristics of the defendant, the nature and circumstances of the offense, the kinds of sentences available, and whether the sentence reflects the seriousness of the offense, promotes respect for the law, provides just punishment, and affords adequate deterrence. *Id*. We analyze each of these factors below.

    A.    *History and Characteristics of the Defendant*

Section 3553(a)(1) directs a district court to evaluate the "history and characteristics of the defendant" in determining the proper sentence for that individual. Professor Mao, a native Mandarin speaker, was born in Guangshui, Hubei, China and is 37 years old. He has been married for over seven years, and is the proud father of two young children, ages one and six. At the time of his arrest, Professor Mao and his family were temporarily living in the United States while he and his wife served as visiting professors at a university in Arlington, Texas.[2]

Professor Mao received his bachelor's degree in computer Science and Technology at Northeast University, Shenyang, China, in 2005, and his Ph.D. in Computer Architecture from Huazhong University of Science and Technology, Wuhan, China in 2010. His research has focused on computer architecture and storage systems and he has over forty publications in international journals and conferences related to computer science. Following his post-doctoral research, Professor Mao joined the faculty of a prestigious university in Fujian Province, China, where he has served in the computer science department since 2013.

Professor Mao has no prior criminal record, and, indeed, has otherwise lived a quiet, exemplary life marked by hard work, devotion to family and academia. We respectfully submit that when viewed in that context, the offense that brings Professor Mao before the Court stands in stark contrast to his otherwise positive and responsible life.

    B.    *Nature of the Offense*

Pursuant to § 3553(a)(1), the Court must consider the "nature and circumstances of the offense" in crafting an appropriate sentence for the defendant. As noted above, Professor Mao pled guilty to a Superseding Information charging him with a single count of making a false statement in violation of 18 U.S.C. § 1001. The false statement was made during Professor

---

[2] Professor Mao and his wife arrived in the United States on October 7, 2018, and were scheduled to return home to China on August 19, 2019.

WILSON SONSINI

The Honorable Pamela K. Chen
December 8, 2020
Page 3

Mao's post-arrest interrogation on August 14, 2019. While we do not challenge the seriousness of this conduct, the overall nature and circumstances of Professor Mao's offense suggest that anything other than the Jointly Recommended Sentence would be "greater than necessary" to accomplish the sentencing objectives of 18 U.S.C. § 3553(a)(2).

In the early morning hours of August 14, 2019, FBI agents arrived at Professor Mao's Arlington, Texas apartment. While Professor Mao's wife and children cowered in the apartment's single bedroom, he was arrested pursuant to a warrant and complaint charging him with wire fraud.[3] Agents seized and imaged the family's computers and cell phones. Professor Mao was eventually taken to the FBI's local offices for questioning. He was interrogated for approximately four-and-a-half hours by two agents concerning a wide range of topics relating to his research, including an open-channel solid state drive or "OCSSD" (a type of computer memory storage device) he had obtained in 2017 in connection with that research, and other faculty with whom he worked in Texas, including his mentor and supervisor, identified in the Superseding Information as "Professor 1."[4] The Superseding Information charges that Professor Mao falsely denied knowing whether Professor 1 had access to an OCSSD board. While Professor Mao was completely forthright in acknowledging to the FBI agents that *he* had possessed and utilized an OCSSD board, in a misguided effort to protect Professor 1, Professor Mao falsely denied knowing whether *Professor 1* also had access to such a board.[5]

    C.    *Applicable Federal Sentencing Guidelines Range*

The Court must consider the applicable advisory guideline range and Sentencing Commission policy statements pursuant to 18 U.S.C. § 3553(a)(4) and (5). Here, the parties are in agreement with respect to the applicable Guidelines range. Professor Mao's base offense level under USSG § 2B1.1(a)(2) is 6. When he is credited for his acceptance of responsibility under § 3E1.1(a), his total offense level is 4. As Professor Mao falls within Criminal History Category I, his offense level falls in Zone A and carries a guidelines range of 0-6 months imprisonment.

---

[3] Under the terms of the Plea Agreement, the government has agreed to dismiss the wire fraud charge against Professor Mao.

[4] Professor Mao did not have the benefit of counsel during any part of the post-arrest interview.

[5] While not excusing his conduct, it is worth noting that the government's investigation was not ultimately impeded to any significant degree by Professor Mao's false statement. Indeed, as they themselves confirm on the video recording of the interrogation, the agents were already well aware that Professor 1 had access to an OCSSD board. *See*, *e.g.*, Sentencing Tr. at 11, *United States v. Santiago*, 1:13-cr-00039-CM (S.D.N.Y. Oct. 22, 2014), ECF 114 (In sentencing the defendant convicted of making a false statement to a $10 fine, Court observed, ". . . a lie that was never believed or relied on, while still a lie, is not much of a crime." ).

WILSON SONSINI

The Honorable Pamela K. Chen
December 8, 2020
Page 4

Thus, the Jointly Recommended Sentence of time served and three years' supervised release is within the applicable guideline's range.

    D.    *The Need to Reflect the Seriousness of the Offense and Provide Adequate Deterrence*

In fashioning an appropriate sentence, the Court must also consider the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2). In Professor Mao's case, all of these purposes are properly served by the Jointly Recommended Sentence.

Professor Mao has already suffered greatly, and will continue to suffer as a direct consequence of this case. He spent nearly a week in a county jail in Texas known for its shockingly poor conditions, in a country totally foreign to him, cutoff from his family, with complete uncertainty of when he would ever be released. He has been barred from working in his lifelong chosen profession, been subject to house arrest and electronic monitoring, and unable to return home to China for well over a year, all during the stress of a global pandemic. Without the opportunity to work to support his family, Professor Mao and his family were forced to move to a smaller and unsanitary apartment. Branded a convicted felon, he will likely never be able to return to the United States and his travel to other countries may be limited as well. His case has received widespread media attention both here in the United States and in China, and his reputation in the academic community has been severely and irreparably tarnished. Indeed, Professor Mao is the subject of numerous prominent articles that will dog him the rest of his life every time someone Googles him. Simply put, Professor Mao, has, and will continue to, pay dearly for his crime.

Moreover, the Court can have a high degree of confidence that Professor Mao will not commit future crimes. First, Professor Mao will almost certainly have no opportunity to commit a similar offense in the future since he is extremely unlikely to ever find himself caught up in a federal criminal investigation again. He is scheduled to leave the United States just two days after his sentencing and likely will never be permitted to return. *See* Sentencing Tr. at 40, *United States v. Saltsman*, 1:07-cr-00641-NGG (E.D.N.Y. July 28, 2010), ECF No. 163 (in assessing risk of recidivism and need for specific deterrence, foreign resident defendant who planned to return to his home country following sentencing "certainly does not create a risk to anyone here"). Moreover, enduring all that Professor Mao has endured over the past 16 months as a result of a criminal case that disrupted his life, cost him his reputation, subjected him to jail and months of house arrest and electronic monitoring, harmed his family and left him with a felony conviction will certainly act as a sufficient deterrent to Professor Mao engaging in any illegal activity in the future. When coupled with the fact that Professor Mao has an otherwise unblemished record and abided by the onerous terms of his pretrial release, the Jointly

**WILSON SONSINI**

The Honorable Pamela K. Chen
December 8, 2020
Page 5

Recommended Sentence is clearly sufficient to deter Professor Mao from future criminal activity.

Nor would a more severe sentence serve general deterrence purposes. No potential future person finding himself in the midst of in a white collar investigation would observe the effects of this case on Professor Mao – branded a felon for life; the loss of his ability to work in his chosen profession; a shattered reputation; the anxiety of living with a criminal investigation hanging over his head; and most significantly, the terrible emotional toll on his family and his relationship with his wife and children – and think that there is only a small price to pay for lying to federal investigators. We respectfully submit that the significant negative consequences visited upon Professor Mao as a result of his conduct and conviction will send a sufficient message of deterrence to any future person in a similar circumstance. *See* Sentencing Tr. at 90, *United States v. Connolly*, 1:16-cr-00370-CM (S.D.N.Y. Oct. 24, 2019), ECF No. 451 (fact that defendant traders who were convicted of rigging LIBOR submissions endured "arrest, . . . the loss of jobs and employability, the financial stress on them and their families, [and] the loss of status in the community" was sufficient to accomplish general deterrence of other traders in securities markets and therefore incarceration was unnecessary).

    E.    *The Court Should Employ Alternatives to Incarceration*

Section 3553(a)(3) requires the Court to consider "the kinds of sentences available" in a given case. This Court, as well as other judges, have recognized how punitive even a short prison sentence – like Professor Mao has already served – is. *See United States v. Johnson*, 16-CR-457-1 (NGG), 2018 WL 1997975, at * 5 (E.D.N.Y. Apr. 26, 2018) ("let me be clear: any amount of prison time is a serious amount of prison time"); *United States v. Mateo*, 299 F. Supp. 2d 201, 210 (S.D.N.Y. 2004) (taking into account at sentencing "the countless humiliations and indignities commonly associated with" incarceration). *See also* Anthony M. Kennedy, Associate Justice, Supreme Court of the United States, Address at the ABA Annual Meeting (Aug. 9, 2003), at 3, *available a*t https://www.supremecourt.gov/publicinfo/speeches/viewspeech/sp_08-09-03 ("One day in prison is longer than almost any day you and I have had to endure").

Moreover, both the Sentencing Reform Act and the Sentencing Guidelines specifically encourage non-jail sentences in cases like Professor Mao's. The Sentencing Reform Act endorses "the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first time offender who has not been convicted of a crime of violence or an otherwise serious offense." 28 U.S.C. § 994(j). Similarly, as a result of a 2018 amendment to the Sentencing Guidelines, Application Note 4 to § 5C1.1 now specifically directs that "if the defendant is a nonviolent first time offender and the applicable guideline range is in Zone A or B of the Sentencing Table, the court should consider imposing a sentence other than a sentence of imprisonment." *Id.*

Here, the Jointly Recommended Sentence offers an alternative to further incarceration that will allow the Court to both punish Professor Mao sufficiently, while permitting him to

WILSON SONSINI

The Honorable Pamela K. Chen
December 8, 2020
Page 6

return to home in China, maintain regular contact with his wife and children, pursue his work and contribute to his community.

  F. *The Need to Avoid Unwarranted Sentencing Disparities*

Finally, § 3553(a) directs the Court to consider the need to avoid unwarranted sentencing disparities among defendants who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6). Here, as described above, this factor strongly weighs in favor of the Jointly Recommended Sentence, which calls for a sentence within the applicable guidelines range.

Figures published by the Sentencing Commission indicate that, in the most recent 2019 fiscal year, only 26.7% of defendants in the Eastern District have been sentenced within the applicable guideline range. U.S. Sentencing Commission, *2019 Annual Report and Sourcebook of Federal Sentencing Statistics*, at Table 30, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2019/Table30.pdf. Nearly all those sentenced outside the guideline range were sentenced *below* the range. *Id*. Even excluding cooperating witnesses who receive a § 5K1.1 letter, over 50% of Eastern District defendants receive a below-guideline sentence. *Id*. Since there are significant mitigating factors that distinguish Professor Mao from the "typical" defendant, and since he is in the lowest advisory guideline range, any sentence above the bottom of his 0 to 6 months guidelines range would be "greater than necessary" to achieve the sentencing purposes of § 3553(a)(2). Likewise, any custodial sentence beyond the Jointly Recommended Sentence would be plainly inconsistent with the treatment of other defendants in this District, the vast majority of whom are sentenced below the guideline range.[6]

II. *Additional Request to Facilitate Professor Mao's Prompt Return to China*

As the Court is aware, Professor Mao and his family are scheduled to return home to China on December 16, 2020. As we have previously explained in our November 30, 2020 letter to the Court, (ECF 77), the proximity of this date to the sentencing date was dictated by the incredible difficulty in security flights to China during the pandemic.

First, assuming the Court accepts the Jointly Recommended Sentence, and imposes a three-year period of supervised release, we respectfully request that the Court expressly direct the Probation Department to permit Professor Mao to travel internationally and specifically to return home on December 16, 2020. We have been advised by the Pretrial Officer currently overseeing Professor Mao's supervision that, as long as the Minute Entry documenting the sentencing proceeding and Final Judgement make reference to this accommodation, the Probation Department will honor it.

---

[6] The final statutory factor required to be considered by the Court at sentencing, the need to provide restitution to victims of the offense (18 U.S.C. § 3553(a)(7)), is inapplicable here.

WILSON
SONSINI

The Honorable Pamela K. Chen
December 8, 2020
Page 7

      Second, if the Court imposes supervised release, we respectfully request that the Court permit Professor Mao to satisfy that term of supervision from his home country of China and require actual reporting only if and when Professor Mao should return to the United States. Indeed, Judges in this district and neighboring districts have routinely approved remote supervision for defendants who are residents of a foreign country. *See, e.g.,* Sentencing Tr. at 44, *United States v. Saltsman*, 1:07-cr-00641-NGG (E.D.N.Y. July 28, 2010), ECF No. 163 (defendant to serve probation and perform community service in Israel); Sentencing Tr. at 92, 95, *United States v. Connolly*, 1:16-cr-00370-CM (S.D.N.Y. Oct. 24, 2019), ECF No. 425 (defendant to serve probation and home confinement in United Kingdom); Judgment, *United States v. Yabe*, 2:18-cr-000726-SRC (D.N.J. May 22, 2019), ECF No. 14 (defendant to serve probation in Japan); Sentencing Tr. at 16-17, *United States v. Curtler*, 1:15-cr-00670-CM (S.D.N.Y. Apr. 9, 2019), ECF No. 28 (defendant to serve probation in United Kingdom); Sentencing Submission & Judgment, *United States v. Stewart*, 1:14-cr-00272-JSR-7 (S.D.N.Y. Feb. 8, 2017 and Feb. 22, 2017), ECF Nos. 275, 277 (defendant to serve probation in United Kingdom); Sentencing Submission & Judgment, *United States v. Yagami*, 1:14-cr-00272-JSR-4 (S.D.N.Y. Feb. 21, 2017 and Mar. 13, 2017), ECF Nos. 276, 282 (defendant to serve probation in Hong Kong); Judgment, *United States v. Robson*, 1:14-cr-00272-JSR-1(S.D.N.Y. Nov. 21, 2016), ECF No. 267 (defendant to serve probation in United Kingdom); *United States v. Gardellini*, 545 F.3d 1089, 1091 (D.C. Cir. 2008) (district court permitted defendant to serve probation in Belgium).

      Third, as we highlighted in our November 30, 2020 letter to the Court, and again during the change of plea proceeding, Professor Mao is subject electronic monitoring as a condition of his bond.  The bracelet he wears to facilitate that monitoring would need to be removed prior to his departure.  Pretrial Services has advised that, as long as there is a Minute Entry making clear that Professor Mao has been sentenced, and thus, that he is no longer subject to electronic monitoring, Pretrial Services will either arrange to remove the bracelet or permit Professor Mao to remove it himself prior to his flight.[7]

      Finally, as the Court may recall, Professor Mao's bond is secured by $95,000 cash deposited with the Clerk's Office.  We respectfully request, that once the Court sentences Professor Mao, it Order the bond exonerated and direct the Clerk of the Court to issue checks made payable to each of the sureties and provide the checks to the undersigned so that they may be distributed. We intend to provide a proposed Order in this regard for the Court's consideration.

---

[7] In our November 30, 2020 letter, we also requested release of the Professor Mao's passport to counsel.  Counsel has since obtained the passport and will retain it until Professor Mao is sentenced or further Order of the Court.

WILSON SONSINI

The Honorable Pamela K. Chen
December 8, 2020
Page 8

III.   *Conclusion*

For the foregoing reasons, we respectfully request that the Court adopt the Jointly Recommended Sentence.

            Respectfully submitted,

            WILSON SONSINI GOODRICH & ROSATI
            Professional Corporation

            s/ *Morris J. Fodeman*
            Morris J. Fodeman
            Michael S. Sommer

            THOMPSON & KNIGHT LLP

            s/ *Richard B. Roper,* III
            Richard B. Roper, IIII

            *Attorneys for Professor Bo Mao*

cc:   All Counsel of Record via ECF